IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 5, 2004 Session

## STATE OF TENNESSEE v. TERRY WEBB

**Appeal from the Criminal Court for Shelby County**
**No. 01-12623     Joseph B. Dailey, Judge**

_____

### No. W2003-03046-CCA-R3-CD  - Filed December 10, 2004

_____

A Shelby County Criminal Court jury convicted the defendant, Terry Webb, of robbery, a Class C felony, and theft of property five hundred dollars or less, a Class A misdemeanor. Following a sentencing hearing, the trial court merged the defendant's theft conviction into his robbery conviction and sentenced him as a Range III, persistent offender, to fourteen years. In this appeal, the defendant claims (1) that the evidence is insufficient to support his conviction for robbery; (2) that the trial court erred when it denied him an opportunity to impeach a witness at trial; (3) that the trial court erred when it denied his request to alter the proposed jury instructions; (4) that the trial court erred when it allowed the victim's in-court identification of the defendant; and (5) that his sentence is excessive. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Loys A. "Trey" Jordan, III, Memphis, Tennessee, for the appellant, Terry Webb.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy P. Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's robbery of a Mapco store where the victim, Betsy Sue Bradley, worked the night shift as a clerk. Officer Gaylor testified that he worked as a patrolman for the police department and that on March 24, 2001, he received "a call of a robbery" at the Mapco store where Ms. Bradley worked. Officer Gaylor testified that he was the first officer to arrive at the scene at 3:15 a.m. He said that Ms. Bradley was "very–kind of upset–excited upset" when he arrived and that her "adrenaline was high." She gave him the license number of the vehicle the two suspects were driving and informed him that cigarettes were taken. Officer Gaylor said he retrieved the

videotape from the store's videorecorder surveillance system, which records the events that take place in the store.

Ivonne Maclin testified that in March 2001, she had been dating the defendant for approximately one month. Ms. Maclin said that she was driving a Dodge Spirit at that time but that the defendant took it one morning. She said the car had not been in her possession since that time. According to Ms. Maclin, she had spent the previous night at the defendant's apartment. The next morning when she awoke the car was gone, along with the defendant. Also missing were her cell phone and money from her purse. The defendant returned later that same day but left again and did not return. Ms. Maclin said that the next time she saw her car was ten days later at the police impound lot.

Ms. Bradley testified that on March 24, 2001, she arrived at work at approximately 10:00 p.m. She said her attention was drawn to a man with a bad limp who entered the store, grabbed a Coke, muttered a few words to her, and then left without paying for the drink. She said that the man had a blue shirt, an orange hat, and a gold tooth. She then watched him leave in a white car with a bad paint job and copied down the license number of the vehicle. She said that, a little later, the defendant entered the store wearing a "tweed-looking" sweater and dark pants. He asked for directions and left. According to Ms. Bradley, "he was as nice as he could be," and then she observed that when he left, he got into the white car with the bad paint job. The man she had noticed earlier with the blue shirt was in the car with him. She said that the defendant and the first man returned later. The defendant entered the store carrying a Budweiser Light box and said to her, "M'am, I'm gonna tell you, this is what we're gonna do, we're gonna help ourselves to a few cartons of cigarettes, and as long as you do what we say do, you won't get hurt." She testified that the defendant then walked behind the store counter. As he did this she followed him, grabbed a broom, and hit him with it. She claimed that she was already shaking when she grabbed the broom. The defendant responded by pushing her back, and, at that point, she thought she saw the imprint of a gun under his clothing. She testified that she backed off, watched the defendant take fifteen to twenty cartons of cigarettes, and telephoned the police as the two men were exiting the store.

Ms. Bradley testified that her voice was quivering and that she was scared to death as she telephoned the police. She said that her fear began when the defendant entered the Mapco store and informed her that he was going to help himself to a few cartons of cigarettes. She testified that she feared for her life when the defendant went behind the counter.

Regarding the videotape recovered from the store's videorecorder surveillance system, Ms. Bradley testified that the camera was focused on the cash drawers, front door, and a portion of the counter. She said that she was present when Officer Gaylor removed the videotape from the store's recorder. During Ms. Bradley's testimony, the videotape was played for the jury while she narrated and explained the events to the court as they occurred on tape. According to her narration the tape showed, inter alia, the defendant entering the store with the Budweiser Light box and making his way toward the counter containing the cigarettes. Ms. Bradley also pointed out the defendant's accomplice standing in the aisle, the broom handle rising up as she hit the defendant, the defendant

as he shoved her, and his subsequent exit. She testified that she was afraid, even after the defendant left the store, because she did not know if he was going to come back and shoot her. Ms. Bradley identified photographs of the vehicle she observed the defendant driving.

The defendant presented no proof at trial. The jury convicted him of theft and robbery based upon the foregoing evidence.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to sustain his conviction for robbery because he did not place the victim in fear. He asserts that the proof shows that the victim's actions were inconsistent with those of a fearful person. The defendant argues that if the victim was in fear at any point, it occurred after the fact and did not precede or occur during the taking of property as required by State v. Owens, 20 S.W.3d 634 (Tenn. 2000). In response, the state points to the victim's testimony that she was afraid before, during, and after the defendant's taking of the property. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). We conclude that the evidence is sufficient to support the defendant's robbery conviction. According to the victim's testimony, she experienced fear when the defendant entered the store and informed her that he was going to "help himself to a few cartons of cigarettes." This statement was followed by, "as long as you do what we say do, you won't get hurt," which could easily be interpreted as a threat of impending personal peril sufficient to inspire fear. See State v. Thien Duc Le, 743 S.W.2d 199, 201 (Tenn. Crim. App. 1987) ("The fear of bodily injury sufficient to support a charge of robbery may be aroused by a word, or gesture, as where the victim is threatened with a gun or knife. Even a slight cause of fear or indirect language of a threatening character may be sufficient to constitute intimidation, and the victim may be deemed to have been put in fear . . . ."). In fact, the victim testified that she was in fear for her life as the defendant went behind the counter. She also testified that she was shaking as she grabbed the broom and followed the defendant, that her voice was quivering and she was scared to death when telephoning the police, and that her fear continued even after the defendant left the store, because she "didn't know if he was gonna come back in and shoot [her] or not." Whether the victim's actions were consistent with those of a fearful person was a jury question, which was resolved by the jury in favor of the state.

-3-

Based upon the victim's testimony, we note that the defendant's reliance upon <u>Owens</u> is misplaced. With regard to the offense of robbery, the court concluded that the law requires that "the use of violence or fear <u>precede or be contemporaneous with the theft</u> to constitute robbery under the statute. Indeed, robbery is committed in Tennessee only if the 'theft of property from the person of another' is <u>accomplished</u> 'by violence or putting the person in fear.'" 20 S.W.2d at 641 (emphasis added) (citation omitted). In the present case, the victim's testimony provided ample evidence to support a jury's finding that the victim was put in fear shortly after the defendant entered the store, that the defendant accomplished the robbery by putting her in fear, and that this fear did not dissipate until sometime after the defendant left the store premises. The evidence is sufficient to convict the defendant of robbery.

## II. DENIAL OF OPPORTUNITY TO IMPEACH

The defendant contends that the trial court abused its discretion by refusing to allow him to cross-examine Officer Gaylor concerning a conflict between Officer Gaylor's testimony at trial and the information contained in his preliminary report. The state responds that the trial court properly excluded the testimony. We agree with the defendant that the trial court erred by not allowing the defendant to rebut Officer Gaylor's testimony. However, the error is harmless.

The standard of appellate review when the decision of the trial judge concerning admissibility of evidence is based on relevance is abuse of discretion. <u>See</u> <u>State v. Dubose</u>, 953 S.W.2d 649, 652 (Tenn. 1997). The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of that discretion. <u>Otis v. Cambridge Mut. Fire Ins. Co.</u>, 850 S.W.2d 439, 442 (Tenn. 1992).

On direct examination, the state asked Officer Gaylor, "What did you find when you got [to Mapco]?" He responded, "I believe it was a call of a robbery of the business." During cross-examination, defense counsel attempted to question Officer Gaylor concerning the fact that his preliminary report classified the defendant's crime as an offense other than a robbery. The state objected, stating that the original charge in the case would be irrelevant. The trial court agreed and sustained the objection. The defendant argues that the officer's characterization of the offense as a "robbery" was "highly prejudicial" to his case. He further claims that the trial court's refusal to allow defense counsel to inquire as to why the officer had described the defendant's crime as a "theft" in his preliminary report was reversible error.

Pursuant to Rule 401, Tenn. R. Evid., "relevant" evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tennessee Rule of Evidence 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Although the record does not contain a copy of Officer Gaylor's report, it reflects that defense counsel wanted to call attention to the fact that Officer Gaylor's testimony, referring to the police call from the dispatcher as a "robbery call," differed from the description he gave the offense in his report. In both the state's and defendant's briefs, the parties claim that Officer Gaylor called the defendant's offense a "theft" in the report. The record reflects that, upon objection by the state, the trial court determined the evidence "irrelevant" and did not expound upon its reasons for this ruling. We agree relative to both the robbery and theft reports. Given Officer Gaylor's testimony that it was a report of a robbery, though, we hesitate to conclude that the defendant was not entitled to rebut it with the officer's report. In any event, we conclude that the trial court's error was harmless. Tenn. R. Crim. P. 52(a).

## III.  JURY INSTRUCTIONS

The defendant contends that the trial court erred by refusing his request to define the element of "fear" with regard to robbery and that the trial court's supplemental jury instructions resulted in prejudice to the defendant's case. The state responds that the trial court's instructions to the jury were correct and appropriate and supported by law. We agree with the state.

Before charging the jury, the trial court discussed the proposed jury instructions with the defendant and the state. The defendant claimed that, with regard to the instructions for robbery, the word "fear" was not defined. The defendant argued that fear was important and a predicate to the taking. He requested the trial court insert a special definition for "fear" in the jury instructions. The trial court denied the defendant's request, responding that "fear" was a word so easily understood that a definition was not required or appropriate. However, the trial court said it would give the defendant wide latitude to argue that the defendant's taking of the property must be a result of having put the victim in fear.

The trial court charged the jury the following definition of "fear": "The fear constituting an element of robbery is fear of present personal peril for violence offered or impending." The defendant did not object. The next day, the jury submitted the following question to the trial court: "Can we get an alternative definition of fear, specifically violence offered or impending." The trial court gave the following supplemental instruction:

> Offered is or means a proposal–or a proposal to do a thing.
> Impending means to be about to happen–to be imminent. However,
> the violence–for purposes of the definition of robbery, the violence
> itself, if it is impending, need not actually to have happened. It means
> to be about to happen or to be imminent.

The defendant objected to the portion of the supplemental instruction which indicated that the violence need not actually occur. In his brief, the defendant asserts that he suffered prejudice from his inability to address the jury's interpretation of the words "offered" and "impending," relative to the sequence of events.

"[A] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Generally, when reviewing jury instructions on appeal to determine whether they are erroneous, this court will review the charge in its entirety and read it as a whole. State v. Stephenson, 878 S.W.2d 530, 555 (Tenn. 1994). A charge shall be considered prejudicially erroneous if it fails to submit the legal issues fairly or if it misleads the jury as to the applicable law. Graham v. State, 547 S.W.2d 531 (Tenn. 1977); State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). The trial court has the authority to respond to jury questions with a supplemental instruction. State v. Moore, 751 S.W.2d 464, 467 (Tenn. Crim. App. 1988). While the better procedure is to admonish the jury not to place undue emphasis on the supplemental instruction and to consider it in conjunction with the entire charge, it is not necessarily reversible error to fail to do so. State v. Chance, 778 S.W.2d 457, 461-62 (Tenn. Crim. App. 1989).

The jury instructions in this case do not fail to submit the legal issues fairly or mislead the jury as to the applicable law. The defendant does not explain why the jury instructions were erroneous or how the instructions misled the jury or misstated the applicable law. The defendant had an opportunity to offer the trial court assistance in defining the words in issue by submitting his own definitions for the jury. This he failed to do. In fact, the trial court assisted the defendant by giving defense counsel "wide latitude" to argue that the defendant's taking of the property must be a result of having put the victim in fear. We conclude that the trial court did not err in its initial instructions to the jury or in the supplemental instruction which clarified "fear," specifically "violence offered or impending."

## IV. IN-COURT IDENTIFICATION

The defendant contends that the trial court erred by allowing the victim to identify the defendant in court and in front of the jury. The defendant argues that it was highly prejudicial and improper because the victim had previously failed to identify the defendant when presented with a photographic lineup. The state argues that the defendant waived the issue by failing to cite any authority for his contention, and, in the event that this court decides the issue is not waived, the state asserts that the defendant's identity was amply established by other evidence. We agree with the state that the issue is waived.

Pursuant to Rule 27(a)(7), T.R.A.P., the brief of the appellant shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . ." Failure to provide argument, citations to proper authority, and appropriate references to the record in support of the arguments are grounds for waiver. State v. McCary, 119 S.W.3d 226 (Tenn. Crim. App. 2003); State v. Thompson, 36 S.W.3d 102 (Tenn. Crim. App. 2000). Similarly, Rule 10 of the Court of Criminal Appeals of Tennessee states that "issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this court." The defendant's brief contained two paragraphs of facts and allegations on this issue which were devoid of argument or citations to any type of legal authority. The issue is waived.

# V. SENTENCING

The defendant contends that his sentence of fourteen years is excessive. He argues that enhancing his sentence from ten years, the presumptive sentence for a Class C felony in Range III, to fourteen years based solely upon his prior criminal record is improper. The state responds that the great weight given to this enhancement factor by the trial court was proper and not an abuse of discretion. We agree with the state.

The defendant's prior criminal record contained four Class D felonies, four Class E felonies, and six misdemeanor convictions. The majority of the convictions involved theft of property: eight theft of property convictions, three burglary convictions, one petit larceny conviction, and two forgery convictions. Five of the eight felony convictions supported the defendant being sentenced as a Range III, persistent offender. The state argued that the defendant should be sentenced to fifteen years, based upon his prior convictions in excess of those necessary to make him a Range III offender. No other enhancement factors were presented. The defendant acknowledged that his sentence is within the statutory range for a Range III persistent offender and that the sole enhancement factor, prior criminal record, used by the trial court was applicable. The defendant presented no mitigating factors but urged the trial court to sentence him to ten years because his prior convictions were property crimes.

In determining the defendant's sentence, the trial court observed that he was a high school graduate and had earned various certificates from more than one trade school, thus being capable of working and earning a living. The trial court believed that the defendant's cocaine addiction, alcohol consumption, and marijuana use led, at least in part, to his lengthy criminal record. The trial court noted that the victim was affected by the robbery and that the crime was well-planned, without regard for the property, safety, or fear of others. After "weighing all these different factors," the trial court sentenced the defendant to fourteen years in confinement.

Our review of sentencing is de novo on the record with a presumption of correctness below. T.C.A. § 40-35-401(d). After imposition of the sentence, the defendant carries the burden to show that the sentence is improper. Therefore, as long as the trial court followed the statutory sentencing scheme, made findings of fact in the record, and gave due consideration in weighing the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In order for the presumption of correctness to attach, there must be an "affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this regard, for purposes of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the
> final sentencing decision, identify the mitigating and enhancement

factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted).

When conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

In Tennessee, the range of punishment for a Range III defendant convicted of a Class C felony is ten to fifteen years. T.C.A. § 40-35-112(c)(3). The appropriate sentence for a Class C felony is presumptively the minimum sentence unless there are enhancement factors present. T.C.A. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d)-(e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Ashby, 823 S.W.2d at 169; Moss, 727 S.W.2d at 237. Because the record reflects that the trial court considered the sentencing principles and all relevant facts and circumstances in sentencing the defendant, the presumption of correctness applies in this case.

The trial court applied enhancement factor (2), the defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(2). The trial court did not specify the weight it gave factor (2) but did not refer to any additional statutory enhancement factors. We conclude that the trial court based its enhancement of defendant's sentence solely on his prior convictions. The record reflects that the trial court's references to the defendant's cocaine addiction, alcohol consumption, and marijuana use were made in the context of commentary as to the root or cause of the defendant's many criminal convictions. The record reveals that three felonies and six misdemeanor convictions may be used to enhance the defendant's sentence. Because the defendant did not present any mitigating factors and the record reflects that none apply, we conclude that the defendant's sentence of fourteen years is proper.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE